**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**Joseph HAUSMAN, d/b/a Alice Meat Company, Appellee.**

**No. 17198.**

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1958.

Jacob I. Karro, Atty., Stuart Rothman, Sol., Miss Bessie Margolin, Asst. Sol., Earl Street, Regional Atty., Dept. of Labor, Washington, D. C., for appellant.

E. G. Lloyd, Jr., Alice, Tex., for appellee.

Before TUTTLE, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellee, Joseph Hausman, is in the business of slaughtering livestock at Alice, Texas. Slaughtering is done for farmers, butchers and others, for which Hausman receives the hide and other inedible portions of the animals as his compensation. He also slaughters for his brother, Sam Hausman, and for this he receives an agreed sum per head. The appellee and his brother sell their hides to the same purchaser who takes delivery at the appellee's place of business, and over ninety per cent. of the hides are shipped outside the State of Texas. In 1953, an investigator from the United States Department of Labor called upon Hausman and told him that the hides were being shipped out of the state and, this being so, he was subject to the wage and hour provisions of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206–207. The investigator also found among Hausman's employees a fifteen-year-old boy. The investigator told Hausman that this employment was a violation of the child labor provisions of the Act, 29 U.S.C.A. § 212, and the pertinent regulations, 29 C.F.R. 1958 Supp. 61. Hausman discharged the boy, paid some back wages and, for a time, complied with the Act. Later, however, he rehired the boy because, he said, the boy had a widowed mother. In January of 1956 another investigation was made and it was found that Hausman was not in compliance with the wage and hour provisions. Hausman claimed that he didn't ship anything out of the state and was not covered by the Act. By June 1956 Hausman was meeting the requirements except as to two of his five or six employees. On June 28, 1956, the Secretary of Labor commenced a suit to enjoin the appellee from violating the Act. At that time Hausman was not in full compliance. The case was tried on July 15, 1957, and the court found that Hausman had been in compliance with the Act for more than a year. The court found that while Hausman did not actually know or concern himself with the ultimate destination of the hides, the circumstances would justify the conclusion that he had reason to believe that they would be shipped out of the state.

The district court decided that Hausman's employees were engaged in the production of goods for commerce and hence subject to the provisions of the Act, but "that, on the whole picture, no injunction will issue at the present time." The district court states in summary its reasons for refusing an injunction in this language:

"Here there is no contention that defendant has violated the Act or regulations for more than one year prior to trial. While there is room for the assertion that his coming into compliance was after a second investigation, it is clear that at all times he contended, and believed, in good faith that his business was purely local as, indeed it is as to its slaughtering activities. The fact that the hides enter into commerce after local delivery is not due to collusion or subterfuge on defendant's part. While the investigator did tell defendant that the hides were in commerce and expressed the usual investigator's opinion that he was covered by the Act, defendant hardly can be blamed for contending to the contrary. His attitude upon the trial was that if this court should hold that his business comes under the Act, he gladly will comply in all respects. I believe he is in good faith in this attitude."

It was held in 1942 that the removing as a part of a slaughtering process, of non-edible meat products including hides, which were shipped in interstate commerce, was a production of goods for commerce. Walling v. Peoples Packing Co., 10 Cir., 1942, 132 F.2d 236, certiorari denied 318 U.S. 774, 63 S.Ct. 831, 87 L. Ed. 1144. A similar conclusion was reached by the District Court for the Western District of Louisiana in 1954. Tilbury v. Rogers, 123 F.Supp. 109. This decision was affirmed by this court in 1955, Tilbury v. Mitchell, 220 F.2d 757. Certiorari was denied on October 10,

1955. Tilbury v. Rogers, 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748. Cf. National Labor Relations Board v. Dallas City Packing Co., 5 Cir., 1956, 230 F.2d 708. In determining whether an injunction should issue this Court has said that the district court should consider.

" * * * the approach and attitude of the parties reflecting the circumstances giving rise to the controversy, the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent of which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contrition under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance and many other similar and related factors from which the Judge can determine the probability of future compliance or violations.

"Where these have been properly evaluated, the action of the Trial Court, whether granting or denying an injunction, will be sustained. But where this has not been the case, reviewing courts have not been slow to act by ordering the issuance of injunction." Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F. 2d 380, 381.

■ The appellee, when first told by the Labor Department investigator that he was subject to the Act, did not stand by his protestation that his business was not covered. Instead he affected a compliance for a time by paying statutory wages and by discharging the minor who was ineligible for employment in his plant. Again being found in non-compliance the appellee again promised to comply but failed to do so until the suit was brought. The appellee's promises to the investigators were not kept. The previous actions of the appellee of non-compliance indicate that reliance should not be placed upon present promises. After the decision in Tilbury v. Rogers, supra, there was no reason for the belief of the appellee that he was not covered by the Act except his desire to so believe. When told by the investigator that the hides moved in interstate commerce, the appellee made no effort to ascertain the facts. When told that the interstate shipment of the hides subjected him to the Act, the appellee made no effort to ascertain the correctness of the statement. He did not seek advice of counsel and, had he done so after Tilbury v. Rogers, supra, was affirmed, he would doubtless have been told that he was covered. We do not think that Hausman's ostrichlike attitude of self-delusion should be accepted as establishing a good faith belief on his part that the Act did not apply to him and his business. "If he did not know, it was because he did not look, or looking, did not see, or want to see what was so plainly there." Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186, 188. The personal belief of the trial judge that an employer will comply with the Act in the future may not be, in the light of the facts, a sufficient reason for denying an injunction. Lenroot v. Kemp, 5 Cir., 1946, 153 F.2d 153.

■ We are convinced that the factors to be considered in determining the probability of future compliance or violations were not correctly evaluated by the district court. The limits upon the broad discretion of the district court to grant or deny injunctive relief in cases such as this were here, we conclude, exceeded. The judgment of the district court denying the injunction is reversed and the cause is remanded with directions to grant an injunction.

Reversed and Remanded.